511 S.E.2d 840

**Thomas L. ADKINS and Joan E. Adkins, Appellants,**

v.

**K–MART CORPORATION and Char–Broil, Appellees.**

**No. 25199.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 10, 1998.

**218**

Kenneth E. Chittum, Esq., McGinnis E. Hatfield, Jr., Esq., Bluefield, West Virginia, Attorneys for Appellants.

J. Peter Richardson, Esq., Richardson & Davis, Bluefield, West Virginia, Attorney for K–Mart Corporation.

Mark W. Browning, Esq., Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorney for Char–Broil.

PER CURIAM: [1]

The Appellants, Plaintiffs below, Thomas L. and Joan E. Adkins (hereinafter the "Adkinses" or "Appellants"), appeal the entry of summary judgment by the Circuit Court of Mercer County in favor of the Appellees, Defendants below, K–Mart Corporation (hereinafter "K–Mart") and Char–Broil (hereinafter "Char–Broil" or collectively as "Appellees"). This appeal arose out of a personal injury/products liability action filed by the Adkinses against the Appellees alleging personal injury and permanent psychological injuries from the explosion/fire to a gas grill manufactured by Char–Broil and sold to the Adkinses by K–Mart. The circuit court found that there was no genuine issue as to any material fact and that Char–Broil and K–Mart were entitled to judgment as a matter of law. The Appellants contend that a genuine issue of material fact exists in the record, that the grant of summary judgment was premature and that the destruction of the gas grill by Nationwide Insurance Company (hereinafter "Nationwide"), absent bad faith on the part of the Appellants, is not sufficient grounds for granting summary judgment in favor of the Appellees.

### I.  Background Facts

The Appellants allege that they purchased an assembled Char–Broil gas grill from the K–Mart in Bluefield, West Virginia, on July 28, 1994; that they used the grill approximately three or four times; and that the last time they used the grill, it exploded and caught fire. They allege that the grill fire caused physical and psychological injury to Mr. Adkins and partial destruction of the Adkinses' home. The Appellants allege that they did not alter or change the grill in any way and used the grill in the manner for which it was intended.

Sometime after the fire in 1994, the Appellants' homeowners' insurance carrier, Nationwide, took possession of the grill and sent it to an engineering firm, Froehling & Robertson, Inc., to determine the cause of the fire. An employee of Froehling & Robertson, Inc., Charles C. Crim, P.E., Senior Engineer, prepared a detailed report, dated December 20, 1994, including 30 photographs, regarding the grill and the possible causes of the fire.[2] Mr. Crim concluded in his report that:

> In summary, it appears that uncontrolled combustion of L.P. gas under the left end of this gas grill resulted in the observed fire damage to the insurers [insureds'] residence. The general appearance and configuration of damage to the grill cart and top of the fuel tank suggests the occurrence of leakage at or above the top of the tank. As of this writing it is no longer possible to evaluate the gas supply hose and regulator due to the severity of fire damage. We can not [sic] rule out some type of installation defect or damage to the hose. It was observed that the pressure relief valve continues to allow some leakage to occur as received. This may be due to fire exposure and degradation of seal materials of the tank valve, or due to some defect in assembly or materials. It was noted the other o-rings and

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201, 423 S.E.2d 600, 604 n. 4 (1992).

2. In that same report, Mr. Crim informed Nationwide that the grill would be disposed of 30 days from the date of his report (December 20, 1994), unless contrary instructions were received in writing. Apparently, Nationwide took no action to preserve the grill at that time.

seal materials that were accessible within the tank valve assembly were slightly deformed in some cases. An alternate theory or scenario of fire causation could involve the food being prepared if burning grease were allowed to drip or run down below the grill resulting in failure of the hose or ignition of other materials. This seems unlikely since the bottom of the grill is designed to prevent this.

The Appellants filed this personal injury/products liability action in the Circuit Court of Mercer County on August 7, 1996, alleging negligence, breach of express and implied warranty and strict liability for defective design and manufacture against K–Mart and Char–Broil. The circuit court did not enter a scheduling order and the Appellants did not engage in any discovery. Char–Broil served three sets of interrogatories and requests for production on counsel for the Appellants on September 11, 1996, November 27, 1996 and May 1, 1997. Char–Broil served two sets of requests for admissions on counsel for the Appellants on November 27, 1996 and May 1, 1997. K–Mart also served interrogatories and requests for production on counsel for the Appellants on October 22, 1996, October 25, 1996 and March 11, 1997.

The Appellants did not respond to the initial discovery until January 16, 1997, and at that time, they revealed that the subject grill was not in their possession, but in the possession of their insurer, Nationwide. K–Mart filed a motion to compel discovery against the Adkinses on December 23, 1996. At the hearing on the motion to compel, the Appellants informed the circuit court that they had requested that Nationwide return the grill without success. On February 14, 1997, the circuit court entered an order directing Nationwide to deliver the grill to the Appellants within two weeks of the date of the order. By letter dated March 6, 1997, an employee of Nationwide informed the circuit court and all counsel that the subject grill had been "destroyed and disposed of."

Both Char–Broil and K–Mart moved for summary judgment. Char–Broil based its motion on the spoliation of the crucial evidence, i.e., the subject grill. Char–Broil's motion included the affidavit of Alex Gafford, the Director of Product Engineering for Char–Broil. Mr. Gafford's affidavit stated that the destruction of the remains of the grill made it impossible to ascertain the exact cause of the fire. Mr. Gafford concluded in his affidavit that:

[T]he destruction of the remains of the gas grill make it impossible to ascertain the exact cause and origin of the gas grill fire and further the destruction of the gas grill completely prevents the parties to sort out the relative responsibility for product defect, if any, improper assembly, if any, improper usage on the part of grill manufacturer, if any, regulator manufacturer, or user of the grill.

K–Mart asserted in its motion that the record established that the Adkinses did not have evidence to support their claims against K–Mart. K–Mart's motion included the affidavit of Joe Beever, the store manager of the Bluefield store. Mr. Beever's affidavit stated that in 1994, the store sold both assembled and unassembled Char–Broil grills, that all assembled Char–Broil grills sold by the store in 1994, were assembled by an independent contractor, and that he could not determine if the grill was sold by K-mart, assembled or unassembled, without inspecting the grill.

The circuit court granted Char–Broil's and K–Mart's motions for summary judgment, finding that there was no genuine issue as to any material fact and that the Appellees were entitled to summary judgment as a matter of law. The circuit court made no findings of fact or conclusions of law in the summary judgment order. In fact, it is unclear on what legal basis the circuit court based its order. The circuit court allowed the Adkinses an additional 30 days before entering the summary judgment order to offer additional evidence to avoid summary judgment. No additional evidence was offered by the Appellants, however, and the summary judgment order was entered on December 18, 1997.

## II. Standard of Review

We are asked to review the circuit court's award of summary judgment in favor of the Appellees. The Appellants contend that the

circuit court erred in granting summary judgment where a genuine issue of material fact exists in regard to the cause of the gas grill fire. The Appellants further contend that the lower court erred in preventing additional discovery regarding the cause of the gas grill fire and that such action prevented the development of additional facts which would support a finding of liability on the part of the either or both of the Appellees.

We review this summary judgment issue under the standard of syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), as follows: "A circuit court's entry of summary judgment is reviewed *de novo*." We also remain cognizant of the fact that "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined." Syl. Pt. 5, *Aetna Casualty & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure, " ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Moreover, we have explained that:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995).

All reasonable doubts regarding the evidence must be resolved in favor of the non-moving party. "A party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Casualty*, 148 W.Va. at 161, 133 S.E.2d at 772. In order for summary judgment to be proper, the movant must demonstrate that there is no evidence to support the non-movant's case and "that the evidence is so one-sided that the movant must prevail as a matter of law." *Tolliver v. The Kroger Co.*, 201 W.Va. 509, 513, 498 S.E.2d 702, 706 (1997).

With respect to the sufficiency of a circuit court's summary judgment order, this Court held in syllabus point three of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997) that:

Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

The summary judgment order in this case falls short of the standard articulated in *Lilly*. The circuit court simply stated in its summary judgment order that "[u]pon mature consideration of the motions and the statements of counsel, the Court does hereby find that there is no genuine issue as to any material fact, and that Char–Broil and KMart are entitled to judgment against the plaintiffs as a matter of law." We need not reverse the circuit court's order under this standard, however, because the ultimate disposition of this case turns on another issue. This case must be reversed because a genuine issue of material fact exists in the record.

### III. Strict Liability in Tort

The Appellants allege that Char–Broil negligently manufactured/designed a defective or dangerous product, and as a

result are strictly liable. They also allege that K–Mart sold them a defective and dangerous product, or, in the alternative, negligently assembled the gas grill in a defective manner. Appellants contend that the nature of their claim is one of strict liability and that they are thus relieved from proving that the manufacturer or seller was negligent in some manner during the manufacturing process and must only prove the defective condition of the gas grill. Appellants basically contend that Char–Broil manufactured a defective and dangerous grill and that K–Mart sold the defective grill and/or assembled the grill in a negligent manner.[3]

We have previously held in syllabus point three of *Morningstar v. Black and Decker Manufacturing Company,* 162 W.Va. 857, 253 S.E.2d 666 (1979) that: "The cause of action covered by the term 'strict liability in tort' is designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability." "Once it can be shown that the product was defective when it left the manufacturer and that the defect proximately caused the plaintiff's injury, a recovery is warranted absent some conduct on the part of the plaintiff that may bar his recovery." *Id.* at 883, 253 S.E.2d at 680. We further explained in syllabus point four of *Morningstar* that:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

*Id.* at 857, 253 S.E.2d at 666.

Both the manufacturer and the seller of the defective product may be found to be liable in a strict liability cause of action. In *Morningstar* we explained that "[t]his rule applies to both the manufacturer and the seller, who are engaged in the business of selling such product which is expected to and does reach the user without substantial change in the condition in which it was sold." *Id.,* at 888, 253 S.E.2d at 683 n. 22; *see also Dunn v. Kanawha County Bd. of Educ.,* 194 W.Va. 40, 46, 459 S.E.2d 151, 157 (1995) ("stating an innocent seller can be subject to liability that is entirely derivative simply by virtue of being present in the chain of distribution of the defective product").

Char–Broil contends that given the destruction of the gas grill, the inability of the Appellees' experts to inspect the grill and the inability of the Appellants' counsel to respond in a meaningful fashion to the written discovery, the circuit court had no alternative but to conclude that there was no genuine issue as to any material fact. Simply stated, Char–Broil contends that without the subject grill, the Adkinses cannot prove the allegations set forth in their complaint. K–Mart contends that the evidence of record clearly demonstrates that no genuine issue of material fact exists.

Appellants argue that they can demonstrate that they purchased an assembled Char–Broil gas grill from the K–Mart in Bluefield, West Virginia, that the gas grill exploded, thereby injuring Mr. Adkins and causing property damage to the Adkinses' home, that Mr. Adkins suffered burns from the grill fire and has incurred expenses related to those burns, and that the grill fire occurred without any modifications or alterations made to the grill by the Adkinses. The Adkinses also possess the report, including 30 photographs of the grill after the fire, prepared by Charles C. Crim, P.E., an engineer hired by Nationwide to determine the cause of the grill fire. Mr. Crim's report lists several possible causes for the grill fire, including a defect in materials or assembly.[4]

---

**3.** Appellants have failed to provide a legal basis for attaching strict liability to Char–Broil under the theory that K–Mart negligently assembled the grill.

**4.** On September 29, 1997, K–Mart served a motion pursuant to Rule 37(b)(2)(B) of the West Virginia Rules of Civil Procedure to bar the Adkinses from offering the testimony of Mr. Crim and any other representative of Froehling & Robertson, Inc. at the trial in this matter because

■ Even though the Adkinses have no direct evidence of the precise cause of the explosion of the grill, circumstantial evidence may be sufficient. This Court held in syllabus point three of *Anderson v. Chrysler Corporation,* 184 W.Va. 641, 403 S.E.2d 189 (1991) [5] that:

> Circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

In the *Anderson* case, the plaintiffs brought a products liability action against a car manufacturer because their car caught fire and was completely destroyed. The plaintiffs observed that the fire started beneath the car's dashboard. Because the car was destroyed, the plaintiffs had no direct evidence of the defect which caused the fire. The plaintiffs, however, had circumstantial evidence which demonstrated that the car had electrical problems from the day it was purchased. This Court found that a fire starting under the dashboard of a new car would not occur in the absence of some defect and that a reasonable trier of fact could infer that the fire arose from a defect in the car's electrical system. *Anderson,* 184 W.Va. at 646, 403 S.E.2d at 194.

Similarly, the Appellants maintain that they can present evidence that they purchased an assembled Char–Broil gas grill from K–Mart, that the gas grill exploded, causing both physical injuries and property damage, that they did not alter or modify the grill in any manner, and that an expert opined that the fire was possibly caused by a defect in the materials or the assembly of the grill. Accordingly, a genuine issue of material fact clearly exists regarding whether or not a defect in the gas grill or in the assembly of the gas grill caused the grill to explode.

Resolving any doubt as to the existence of a genuine issue of material fact against K–Mart and Char–Broil as the movant for summary judgment, we find that the circuit court erred in granting summary judgment and we remand this case for further proceedings. In so doing, we express no opinion regarding the appropriate ultimate resolution of this matter. We find only that a genuine issue of material fact exists and inquiry concerning the facts is desirable to clarify the application of the law.

### IV. Spoliation of Evidence

■ Char–Broil argues strenuously that the Appellants' personal injury/products liability action should be dismissed because the crucial evidence, i.e. the gas grill, has been destroyed. This is not an appropriate case to determine the proper sanction(s) for spoliation of evidence because the party allegedly responsible for destroying the evidence, Nationwide, is not a party to this lawsuit.

The Appellants have a separate action pending against Nationwide in the Circuit Court of Mercer County involving the de-

---

either Mr. Crim or other agents or employees of Froehling & Robertson, Inc., destroyed the gas grill before K–Mart and Char–Broil had the opportunity to inspect the grill. In its brief to this Court, Char–Broil argues that Mr. Crim should not be able to testify and that his report should not be considered as evidence because an expert should not be permitted to intentionally or negligently destroy or dispose of evidence, and then substitute his own description of the evidence. *See Nally v. Volkswagen of America, Inc.,* 405 Mass. 191, 539 N.E.2d 1017, 1021 (1989) (holding that where an expert has intentionally or negligently damaged, destroyed or removed an item of physical evidence, that expert should be precluded from substituting his own description

of the evidence). Because the circuit court did not address this issue, we decline to do so at this time. Even if the lower court determines that the expert cannot testify, either because of his role in of the loss of evidence or because he is unable to render an opinion on the precise cause of the explosion, the Appellants' lay evidence could well be sufficient to overcome a directed verdict.

5. Even though the *Anderson* case involved an appeal from an order which granted a directed verdict in favor of the automobile manufacturer, its holding is still instructive in the instant matter.

struction of the gas grill.[6] We render no opinion regarding that action as it is not before this Court. Previously, this Court has declined to address whether or not spoliation of evidence is a valid cause of action. *See Harrison v. Davis,* 197 W.Va. 651, 664, 478 S.E.2d 104, 117 (declining to resolve viability of spoliation of evidence cause of action); *Taylor v. Ford Motor Co.,* 185 W.Va. 518, 519, 408 S.E.2d 270, 271 n. 2 (1991) (refusing to determine validity of cause of action for spoliation of evidence). Several other states, however, have recognized the tort of intentional[7] and/or negligent[8] spoliation of the evidence. It appears there may be a valid cause of action for spoliation of evidence in appropriate cases. Depending on the outcome of the trial in the instant matter, either Appellants or Appellees might be able to seek damages in a spoliation of evidence cause of action. Because we do not have before us a full record, we decline to address at this time the precise elements of such a claim.

Based upon the foregoing, we reverse the order of the Circuit Court of Mercer County granting summary judgment in favor of the Appellees and we remand this case for further proceedings.

Reversed and remanded.

Justice McGRAW did not participate in the decision of this case.

---

6. In that action, the Appellants allege that Nationwide negligently destroyed the gas grill and caused the Adkinses to be unable to have the grill examined to determine the exact cause of the fire. The Appellants further allege that they are entitled to recover from Nationwide the amount they would have been able to recover from the seller or manufacturer of the grill.

7. These states include Alaska, New Mexico and Ohio. *See Hazen v. Municipality of Anchorage,* 718 P.2d 456 (Alaska 1986); *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185 (1985); *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993).

8. These states include Pennsylvania, California and Florida. *See Pirocchi v. Liberty Mut. Ins. Co.,* 365 F.Supp. 277 (E.D.Pa.1973); *Johnson v. United Services Auto. Ass'n,* 67 Cal.App.4th 626, 79 Cal.Rptr.2d 234 (1998); *Bondu v. Gurvich,* 473 So.2d 1307 (Fla.Dist.Ct.App.1984).