IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0531

_____

FILED

**April 10, 2014**

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MICHAEL A. GRAY,
Plaintiff Below, Petitioner

v.

JEFFREY C. BOYD and CITY OF PARKERSBURG,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Wood County
The Honorable J.D. Beane
Civil Action No. 12-C-123

REVERSED AND REMANDED

_____

Submitted: March 5, 2014
Filed: April 10, 2014

James I. Stealey, Esq.                          Cy A. Hill, Jr., Esq.
The Stealey Law Firm, PLLC              Mannion & Gray Co., L.P.A.
Parkersburg, West Virginia               Charleston, West Virginia
Counsel for Petitioner                        Counsel for Respondents

The Opinion of the Court was delivered PER CURIAM.

1. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2. "'"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 2, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

3. "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

4. "A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

5. "Roughly stated, 'genuine issue' for purposes of West Virginia Rule of Civil Procedure 56(c), is simply one half of a trial worthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. The opposing half of the trial worthy issue is present where the nonmoving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the litigation under applicable law." Syl. Pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995).

6. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing of an essential element of the case that it has a burden to prove." Syl. Pt. 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

7. "Where the police are engaged in a vehicular pursuit of a known or suspected law violator, and the pursued vehicle collides with the vehicle of a third party, under W.Va. Code, 17C-2-6 (1971), the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision." Syl. Pt. 5, *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300 (1991).

8. "W.Va. Code, 17C-2-5(d) (1971), requires the driver of an emergency vehicle to exercise due care under the circumstances to avoid collisions between the emergency vehicle and persons or property." Syl. Pt. 4, *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300 (1991).

9. "By virtue of W.Va. Code 17C-2-5(d), the driver of an authorized emergency vehicle is not relieved of the duty to drive with due regard for the safety of others." Syl. Pt. 4, *McClanahan v. Putnam Cnty. Comm'n*, 174 W.Va. 478, 327 S.E.2d 458 (1985).

Per Curiam:

This is an appeal by Michael A. Gray (hereinafter "the petitioner") from an order of the Circuit Court of Wood County granting summary judgment in favor of the City of Parkersburg and Jeffrey C. Boyd (hereinafter "the respondents"). Upon thorough review of the appendix record, the arguments of the parties, and applicable precedent, this Court finds that disputed issues of material fact exist, rendering the circuit court's entry of summary judgment erroneous. Accordingly, we reverse and remand for further proceedings.

## I. Factual and Procedural History

On December 3, 2011, two City of Parkersburg, West Virginia, fire trucks exited a fire station in response to an emergency call. The fire trucks activated their lights and sirens while departing the station. As the two vehicles traveled north on Avery Street and approached the intersection of Avery Street and 7th Street, the first fire truck proceeded through a green light without incident. As the second fire truck, operated by Mr. Boyd, approached the intersection, the light turned red. Mr. Boyd indicated that two additional manual sound devices had been activated as he approached the intersection and that he had reduced his speed from approximately thirty miles-per-hour to five miles-per-hour to travel over the railroad tracks immediately preceding the intersection. He further stated that he observed a bucket truck stopped directly to his left in the far right lane of 7th Street. The

1

bucket truck remained stopped at a green light while Mr. Boyd's fire truck entered the intersection. Observing no other traffic on 7th Street, Mr. Boyd continued through the intersection of Avery and 7th Street. As he traveled through the intersection with his lights and sirens activated, the petitioner's vehicle, traveling east on 7th Street, proceeded into the intersection. The fire truck struck the petitioner's vehicle in the rear passenger side.

Mr. Boyd testified that a traffic control system, known as Opticon, was not in working condition at the time of the accident. The Opticon system is designed to automatically provide a green light through an intersection as emergency vehicles approach. Mr. Boyd testified that he was aware that the system was not properly functioning on the day of the accident.

The petitioner subsequently filed a complaint against the respondents, alleging negligent operation of the fire truck by Mr. Boyd. In his deposition, the petitioner stated that he had a green light at the intersection. Although he explained that he did not see the first fire truck proceed through the intersection, he does not dispute that the fire truck operated by Mr. Boyd had activated its lights and siren as it approached and entered the intersection. However, the petitioner did not hear the siren until immediately prior to impact.

2

Mr. Matthew Winans, the driver of the bucket truck and an eyewitness to the accident, stated in his deposition that the lights and sirens on the fire truck operated by Mr. Boyd were activated as the fire truck approached the intersection. Mr. Winans further explained that the fire truck reduced its speed as it approached the intersection. Mr. Winans remained at the scene after the accident to advise emergency personnel that it was his opinion that the fire truck driver was not at fault in the accident.

Patrolman K.A. Nichols of the Parkersburg Police Department investigated the collision. In his report, Patrolman Nichols concluded that Mr. Boyd had failed to yield the right-of-way to the petitioner and had run a red light. Moreover, Patrolman Nichols assigned all responsibility for the collision to Mr. Boyd.

Subsequent to discovery, the respondents filed a motion for summary judgment, alleging that the petitioner was guilty of negligence in causing the collision as a matter of law and that Mr. Boyd was operating the emergency vehicle in accordance with the requirements of West Virginia Code § 17C-2-5 (2013).[1] That statute provides that a driver

---

[1]West Virginia Code § 17C-2-5 provides as follows:

(a) The *driver of an authorized emergency vehicle*, *when responding to an emergency call* or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(continued...)

3

of an authorized emergency vehicle is not required to observe certain traffic regulations if the driver sounds an audible signal and if the vehicle is equipped with and utilizing a flashing lamp of a certain strength. The statute does specify, however, those "provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard

---

[1](...continued)
(b) The driver of an authorized emergency vehicle may:

    (1) Park or stand, irrespective of the provisions of this chapter;

    (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

    (3) Exceed the speed limits so long as he does not endanger life or property;

    (4) Disregard regulations governing direction of movement of turning in specified directions.

(c) The exemptions herein granted to an authorized emergency vehicle shall apply *only when the driver of any said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle* as may be reasonably necessary, and when the vehicle is *equipped with at least one lighted flashing lamp* as authorized by section twenty-six, article fifteen of this chapter which is visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a warning light visible from in front of the vehicle.

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the *duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.*

*Id*. § 17C-2-5 (emphasis supplied).

4

for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." *Id*. § 17C-2-5(d).

The respondents further asserted that the petitioner had breached the duties imposed upon him by West Virginia Code § 17C-9-5 (2013),[2] which provides that drivers should yield the right-of-way and stop parallel to the right edge of the roadway upon the

[2]West Virginia Code § 17C-9-5 provides:

a) Upon the immediate approach of an authorized emergency vehicle equipped with at least one flashing lighted lamp of a color authorized by section twenty-six, article fifteen of this chapter, which is visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle other than a police vehicle when operated as an authorized emergency vehicle, and when the driver is giving audible signal by siren, exhaust whistle, or bell:

(1) *The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb* of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

(2) Upon the approach of an authorized emergency vehicle, as above stated, the motorman of every streetcar shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

(b) This section *shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety* of all persons using the highway.

*Id*. § 17C-9-5 (emphasis supplied).

approach of a properly equipped emergency vehicle. This statute further provides that it "shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." *Id.* § 17C-9-5.

On February 6, 2013, the circuit court entered an order granting summary judgment to the respondents and finding that the petitioner had failed to establish that Mr. Boyd violated his duty as the operator of an emergency vehicle under West Virginia Code § 17C-2-5. The circuit court further found that no genuine issue of material fact existed regarding the cause of the accident. In analyzing the distinct standard of care provided in the statute and applicable to Mr. Boyd, the circuit court found that the fire truck's lights and sirens were activated as it approached the intersection and that the horn was sounded. Thus, the circuit court found that the requirements of the statute had been satisfied and that Mr. Boyd could not be held legally liable for causing the collision. Moreover, the circuit court found that the petitioner's testimony that he did not hear the siren until the moment of impact was insufficient to overcome the testimony of Mr. Boyd and the witness, Mr. Winans. Despite the fact that the force of the collision spun the petitioner's vehicle 180 degrees in the intersection, the circuit court found insufficient evidence to support the petitioner's claim that Mr. Boyd had failed to reduce the fire truck's speed appropriately when entering the intersection or had otherwise failed to comply with his statutory duty to drive with due regard for the safety of others.

On appeal to this Court, the petitioner contends that the circuit court erred in granting the respondents' motion for summary judgment. The petitioner maintains that genuine issues of material fact exist regarding the cause of the accident and the breach, if any, of the duties and standards of care owed by both parties. The petitioner contends that a jury should have been permitted to assess the evidence and render a verdict.

## II. Standard of Review

This Court has consistently held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, regarding the propriety of resolution through summary judgment, this Court has held:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 2. In syllabus point three of *Painter*, this Court also cautioned that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." *Id.*, syl. pt. 3.

In assessing the matters presented to this Court on appeal, we are cognizant of the following:

> Because appellate review of an entry of summary judgment is plenary, this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. An appellate court is not restricted to the circuit court's reasoning but can affirm or reverse the entry of summary judgment on any independently sufficient ground.

*Asaad v. Res-Care, Inc.*, 197 W.Va. 684, 687, 478 S.E.2d 357, 360 (1996). With these principles as guidance, this Court addresses the petitioner's assignments of error.

## III. Discussion

The petitioner argues that the circuit court erred by granting summary judgment and by substituting its judgment for that of a jury in determining issues of negligence, causation, duty, standard of care, and witness credibility. As this Court has distinctly articulated on numerous occasions, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (internal quotations omitted). According to the petitioner, the error of substituting the circuit court's judgment for that of a jury resulted in the circuit court's adoption of a view of the evidence in the light most favorable to the City of Parkersburg and Mr. Boyd.

8

This Court's precedent clearly establishes that doubt must be resolved *against* the party moving for summary judgment. In syllabus point six of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court stated that "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved *against the movant* for such judgment." *Id.* at 161, 133 S.E.2d at 772, syl. pt. 6 (emphasis supplied). This Court elaborated upon that standard in *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741 (1995), explaining:

> The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment; in assessing the record to determine whether there is a genuine issue as to any material facts, the circuit court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. The inferences to be drawn from the underlying affidavits, exhibits, answers to interrogatories, and depositions must be viewed in the light most favorable to the party opposing the motion.

*Id*. at 105, 464 S.E.2d at 747.

This Court has defined a genuine issue of fact as follows in syllabus point five of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995):

> Roughly stated, "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of the trialworthy issue is present where the non-moving

9

party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

*Id*. at 707, 461 S.E.2d at 453, syl. pt. 5. This Court has also explained that "[a] dispute about a material fact is 'genuine' only when a reasonable jury could render a verdict for the nonmoving party, if the record at trial were identical to the record compiled in the summary judgment proceedings before the circuit court." *Powderidge Unit Owners Ass'n v. Highland Hills Props. Ltd.*, 196 W.Va. 692, 707, 474 S.E.2d 872, 887 (1996).

In syllabus point four of *Painter*, this Court enunciated the circumstances under which summary judgment is properly utilized:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing of an essential element of the case that it has a burden to prove.

192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 4. A summary judgment proceeding is not a proper forum for the resolution of issues of material fact, and "the trial judge should resist the temptation to try cases in advance on motions for summary judgment[.]" *Warner v. Haught, Inc.*, 174 W.Va. 722, 731, 329 S.E.2d 88, 97 (1985). In *Hanlon*, this Court stated:

On a motion for summary judgment, neither a trial nor appellate court can try issues of fact; a determination can only be made as to whether there are issues to be tried. To be specific, if there is any evidence in the record from any source from which a reasonable inference can be drawn in favor of the nonmoving party, summary judgment is improper.

10

195 W.Va. at 105, 464 S.E.2d at 747.

With regard to the evaluation of the evidence of record in this case, the respondents suggest that this matter is readily resolved through the application of West Virginia Code § 17C-2-5 and West Virginia Code § 17C-9-5. They cite West Virginia Code § 17C-2-5 for the proposition that the conduct of an emergency vehicle driver, such as Mr. Boyd in this instance, is entitled to be assessed under a distinct standard of care and that Mr. Boyd satisfied all the statutory requirements for a driver of an emergency vehicle. Additionally, the respondents argue that the petitioner failed to satisfy his duty under West Virginia Code § 17C-9-5 to yield the right-of-way to the approaching emergency vehicle.

While certainly applicable to this case, these statutes do not dispose of this matter as expeditiously as the respondents imply. Indeed, as the respondents maintain, a distinct standard of care is applicable to Mr. Boyd as the operator of an emergency vehicle. However, a determination of whether his conduct conformed to the requirements of the statute is nonetheless a factual inquiry.

In arguing that Mr. Boyd complied with the appropriate standard of care, the respondents reference *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300 (1991), wherein this Court examined West Virginia Code § 17C-2-5 in the context of a collision between a private

11

driver and a vehicle being pursued by a state trooper. The police vehicle itself was *not* involved in the collision in *Peak*. This Court reasoned as follows in *Peak*:

> This provision [17C-2-5], which is common to the statutes of other states, appears to contain a dual standard of care. The provision states that the driver of an emergency vehicle has the "duty to drive with due regard for the safety of all persons," implying a negligence standard. However, this is followed by the statement that the driver is not protected "from the consequences of his reckless disregard for the safety of others." This language clearly suggests that the emergency driver is accountable only for reckless acts or gross negligence.

185 W.Va. at 552, 408 S.E.2d at 304.

The respondents' reliance upon *Peak* is misplaced because its factual pattern is not analogous to the present case, its holdings are not directly controlling, and its conclusions were limited to a situation in which a police vehicle was pursuing an individual suspected of violating the law. In *Peak*, the Court was asked to rule upon the standard applicable when the emergency vehicle was *not even involved* in the collision. The accident occurred when the vehicle the police car was pursuing hit a private driver. With regard to that limited circumstance, the Court held as follows:

> Where the police are engaged in a vehicular pursuit of a known or suspected law violator, and the *pursued vehicle collides with the vehicle of a third party*, under W.Va. Code, 17C-2-6 (1971), the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision.

12

185 W.Va. at 550, 408 S.E.2d at 302, syl. pt. 5 (emphasis supplied). Thus, the *Peak* Court affirmed the circuit court's grant of judgment notwithstanding the verdict because there was insufficient evidence to indicate that the police officers had engaged in reckless conduct or gross negligence. *Id*. at 558, 408 S.E.2d at 310.

In syllabus point four of *Peak*, this Court explained that "W.Va. Code, 17C-2-5(d) (1971), requires the driver of an emergency vehicle to exercise due care under the circumstances to avoid collisions between the emergency vehicle and persons or property." 185 W.Va. at 550, 408 S.E.2d at 302, syl. pt. 4. This Court discussed the fact that an emergency vehicle driver is "shielded against liability arising from violations of the ordinary motor vehicle statutes." *Id*. at 553, 408 S.E.2d at 305. We specified, however, that "[w]e use the term 'shielded' in a limited sense because while W.Va. Code, 17C-2-5(b), identifies the rules of the road which the emergency vehicle driver may disregard, it still requires some cautionary conduct on his part." 185 W.Va. at 554 n.8, 408 S.E.2d at 306 n.8.

This Court addressed a factual scenario similar to the present case in *McClanahan v. Putnam County Commission*, 174 W.Va. 478, 327 S.E.2d 458 (1985). In *McClanahan*, an ambulance responding to an emergency call collided with another vehicle. The jury found in favor of the ambulance, ruling that the plaintiffs were fifty-one percent negligent. The circuit court refused the plaintiffs' motion to set aside the verdict, and the

13

plaintiffs appealed on the basis of an alleged instructional error. Specifically, the plaintiffs contended that the circuit court erred in refusing to give certain jury instructions regarding traffic violations committed by the ambulance driver. The circuit court refused to give such instructions because they did not properly address the concept embodied in West Virginia Code § 17C-2-5 that an emergency vehicle driver may disregard traffic regulations if due care is exercised while driving. 174 W.Va. at 480, 327 S.E.2d at 460.

On appeal, this Court acknowledged that although an emergency driver may be exempt from complying with specific traffic regulations, the driver may still be liable for failure to exercise due regard for the safety of others. In syllabus point four of *McClanahan*, this Court stated that "[b]y virtue of W.Va. Code 17C-2-5(d), the driver of an authorized emergency vehicle is not relieved of the duty to drive with due regard for the safety of others." 174 W.Va. at 479, 327 S.E.2d at 459-60, syl. pt. 4. The driver "can be charged with failure to exercise due care in the operation of his vehicle under all of the circumstances then existing." *Id.* at 483, 327 S.E.2d at 464.[3] Consequently, this Court found no instructional error and affirmed the circuit court's ruling that the jury verdict should not be disturbed.

---

[3]*See also Muldoon v. Kepner*, 141 W.Va. 577, 583, 91 S.E.2d 727, 730-31 (1956) (referencing West Virginia Code § 17C-2-5(d) and holding that it "provides expressly that the driver of an authorized emergency vehicle shall not be relieved from the duty to drive with due regard for the safety of all persons . . . ."); Syl. Pt. 1, *Vaughn v. Oates*, 128 W.Va. 554, 37 S.E.2d 479 (1946) ("The fact that a vehicle may have a right of way over a public road or street does not relieve the operator of such vehicle from the duty to operate the same with reasonable care.").

The respondents also direct this Court's attention to *Davis v. Cross*, 152 W.Va. 540, 164 S.E.2d 899 (1968). In that case, a fire truck owned and operated by the City of Elkins was responding to an emergency call with its lights and sirens activated when it ran a stop sign and collided with an individual operating a motorcycle. *Id.* at 540, 164 S.E.2d at 900. The operator of the motorcycle sued the city for negligence. The jury ultimately returned a verdict in favor of the motorcycle driver, but the circuit judge set aside that verdict based upon the principles set forth in West Virginia Code § 17C-2-5. On appeal, this Court stated that "[t]he principal question . . . is whether, under the circumstances revealed by the record, there was sufficient evidence of negligence on the part of the defendant to warrant submission of the case to the jury." 152 W.Va. at 542, 164 S.E.2d at 901. This Court explicitly found the evidence "undisputed that the [fire truck] driver entered this intersection at a slow rate of speed and exercised care for the safety of others properly using the streets." *Id.* at 544, 164 S.E.2d. at 902. Thus, this Court upheld the circuit court's entry of judgment in favor of the City, "[t]here being no credible evidence of primary negligence on the part of the defendant." *Id.* at 548, 164 S.E.2d at 904.

This Court's prior decisions regarding the application of West Virginia Code § 17C-2-5 expressly provide that a jury is entitled to assess the evidence where a genuine issue of material fact exists and is further entitled to be properly instructed on the standards

15

applicable to an emergency vehicle accident. A case such as *Davis*, where the facts are relatively undisputed, is readily distinguishable from the case sub judice because the evidence presented herein establishes genuine issues of material fact with regard to the circumstances surrounding this accident. This Court's review of the record leads to the conclusion that the City of Parkersburg and Mr. Boyd failed to satisfy their burden of proving that no genuine issue of material fact existed.[4]

The facts discernable from a review of the record in the instant case reveal a myriad of disputed genuine issues of material fact concerning whether Mr. Boyd employed due care in operating the fire truck. The deposition testimony of the parties, as well as evidence provided by the witness and the investigating officer, present conflicting views of the conduct proximately causing this accident. As the petitioner emphatically asserts on appeal, Mr. Boyd admitted that he drove the fire truck through the intersection when the light

---

[4]In assessing evidence presented, this Court has repeatedly held that issues of negligence and due care must remain firmly within the province of the jury, rather than a circuit court. In syllabus point five of *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964), this Court explained: "Questions of negligence, due care, proximate cause, and concurrent negligence present issues of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." *Id.* at 381, 135 S.E.2d at 238, syl. pt. 5. Moreover, where a trier of fact could potentially reach two different conclusions, this Court has ruled that, "[a]ll reasonable doubts regarding the evidence must be resolved in favor of the non-moving party." *Adkins v. K-Mart Corp.*, 204 W.Va. 215, 220, 511 S.E.2d 840, 845 (1998).

16

was red. He further admitted that he knew the Opticon system was not operating properly.[5]

The petitioner also raises serious questions regarding the fire truck's speed as it proceeded through the intersection, based upon the fact that the force of the collision was sufficient to spin the petitioner's vehicle 180 degrees. Further, the investigating officer clearly found Mr. Boyd responsible for causing the collision. No fault was attributed to the petitioner, and his vehicle was struck in the right rear quarter panel, indicating that his vehicle was almost completely through the intersection before it was hit by the fire truck. The petitioner stated that he did not hear a horn or a siren, nor did he see lights flashing until immediately before the collision. Testimony from all individuals indicated that the corner of Avery and 7th Streets provides very limited visibility of approaching traffic due to the proximity of the buildings to the streets.

Based upon the foregoing, this Court finds that the existence of multiple genuine issues of material fact demonstrates the error in the circuit court's order granting summary judgment in this case. For the reasons discussed herein, the February 6, 2013, summary

---

[5]The respondents contend that the maintenance of the Opticon system is irrelevant because the petitioner failed to properly assert the City's negligence in operating the Opticon system. In responding to the motion for summary judgment, however, the petitioner does assert that Mr. Boyd was aware that the Opticon system was non-operational on the day of the accident and consequently should have recognized the heightened degree of danger in proceeding through the city streets without a system to assure green lights for emergency vehicles.

17

judgment order of the Circuit Court of Wood County is reversed, and this matter remanded

for further proceedings consistent with this opinion.

Reversed and Remanded.